IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| KAMAL K. PATEL #56496-080 | § |
| | § |
| V. | §   A-07-CA-760-SS |
| | § |
| UNIT MANAGER WARREN, | § |
| CORRECTIONAL OFFICER WIDDEN, | § |
| ASSISTANT INMATE SYSTEMS | § |
| MANAGER MARY J. MASON, | § |
| WARDEN R. D. MILES, RONALD | § |
| THOMPSON, HARRELL WATTS, | § |
| HARRY G. LAPPIN, and BUREAU | § |
| OF PRISONS | § |

**INTERIM REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE SAM SPARKS
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Interim Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's amended civil rights complaint; the Defendants' Motion to Dismiss or for Summary Judgment; Plaintiff's "joint response" thereto; the Defendants' reply; Plaintiff's individual reply; and the Defendants' sur-reply. Plaintiff has paid the filing fee for this action.

## I. BACKGROUND

Plaintiff Kamal Patel, along with three other federal inmates, filed their original complaint on May 8, 2003, in the United States District Court for the District of Columbia pursuant to Bivens v. Six Unknown Agents of the Bureau of Narcotics and Dangerous Drugs, 403 U.S. 388, 91 S. Ct. 1999 (1971). At the time the original complaint was filed Plaintiff Patel was confined in FCI Big Spring. Plaintiff previously had been confined in FCI Beaumont, FCI Bastrop and other federal facilities. Plaintiff is currently confined in FCI Butner.

The four original plaintiffs sued Terri Satcher, Frank Lena, Pamela Rains, Ron Woods, John Thombone, FNU Wallingsford, FNU Fontenot, and Marvin Morrison, employees of FCI Beaumont. In addition, they sued FNU Warren, FNU Widden, Mary J. Mason, and R.D. Miles, employees of FCI Bastrop. In addition to these prison employees the plaintiffs sued Regional Director Ronald Thompson, National Inmate Appeals Administrator Harrell Watts, the Director of the Bureau of Prisons Harry G. Lappin and the Bureau of Prisons ("BOP").

On September 29, 2003, the defendants filed a "Motion to Dismiss or for Summary Judgment or in the Alternative to Transfer." On May 14, 2004, the plaintiffs filed an amended complaint, adding Mamdouh M. Mahmoud as a defendant and adding a claim pursuant to the Privacy Act. On June 1, 2004, Defendants moved to strike the amended complaint, arguing it would be futile to amend.

On June 2, 2004, the District Court for the District of Columbia granted the defendants' request to transfer and transferred the case to the Tyler Division of the Eastern District of Texas. The District of Columbia court did not rule on the request to dismiss or for summary judgment or on the motion to strike.

On August 9, 2004, the Tyler court transferred the case to the Beaumont Division of the Eastern District of Texas, because that is where FCI Beaumont is located. Shortly after receiving the case, the Beaumont court severed the plaintiffs' case into four separate actions. Plaintiff Patel's action was assigned Cause No. 1:04-CV-622. Nearly three years later on August 30, 2007, the Magistrate Court in Beaumont severed Plaintiff's claims brought against Defendants Warren, Widden, Mason and Miles and transferred them to this Court.[1] Plaintiff's claims against these defendants relate to his previous confinement at FCI Bastrop. Because the transfer order failed to include all of the defendants Plaintiff Patel sued regarding his confinement at FCI Bastrop, an amended transfer order was filed. This Court construes the Magistrate Court's amended transfer order as transferring all of Plaintiff's claims relating to his confinement at FCI Bastrop, including his claims that his property was illegally seized, his legal correspondence was improperly opened, and he was exposed to second-hand smoke. In addition to bringing these claims against Defendants Warren, Widden, Mason and Miles, these claims were brought against Defendants Thompson, Watts, Lappin and the BOP.

Ordinarily when multiple plaintiffs file a joint complaint and the plaintiffs' claims are severed into separate actions, this Court would direct the plaintiff before it to file an amended complaint with respect to only his claims. Because of the inordinate delays Plaintiff Patel has already experienced in attempting to have his claims litigated, this Court will parse Plaintiff Patel's claims from the amended complaint and will address each claim individually. Plaintiff identifies the claims arising out of his FCI Bastrop confinement and numbers them claims 12-17 and 18-21.

---

[1] Shortly before the transfer, the Magistrate Court in Beaumont issued a Report and Recommendation, recommending that summary judgment be granted with respect to the claims remaining before it.

3

With respect to his confinement in FCI Bastrop Plaintiff Patel alleges upon his arrival at FCI Bastrop prison officials refused to provide him with all of his legal materials (claims 12-13). Plaintiff asserts he complained and was called to the Receiving and Discharge Department on August 1, 2001. According to Plaintiff Patel, Officer Lara was informed by Mary J. Mason, who was allegedly in charge of issuing inmates their personal and legal property, to not let Patel have all of his property, and instead, Patel asserts, Officer Lara, pursuant to Mason's orders, seized two boxes of materials, including legal books, religious books and legal documents. Plaintiff maintains he was required to provide postage to ship the boxes to his house or risk their destruction. Plaintiff argues pursuant to BOP Program Statement 1315.06, regional counsel should have been contacted because a dispute had arisen as to what materials constituted legal materials. Plaintiff asserts he protested the seizure to Warden Miles, Regional Director Thompson and National Inmate Appeals Administrator Watts. Plaintiff urges Mason's conduct violated his right to maintain his legal materials. With regard to this claim Plaintiff sues the BOP and Defendant Lappin, seeking an injunction allowing Plaintiff to possess the legal reference materials seized and to allow the materials to be re-sent to him. He further seeks a declaration that the seizure violated his rights. He also sues Defendants Miles and Mason and seeks compensatory damages and punitive damages in excess of $100,000.00. He further sues Defendants Thompson and Watts for their denial of his administrative remedies and requests $100,000.00.

Next, Plaintiff alleges on July 31, 2001, a letter to him from attorney Gary Peterson was opened outside his presence in violation of BOP Program Statement 5265.10 and 28 C.F.R. § 540.19(b) (claim 14). Plaintiff mistakenly indicates his letter was received by FCI Beaumont, as

Plaintiff was still confined in FCI Bastrop when the letter was opened.[2] Plaintiff contends the letter was opened in retaliation for his protestations regarding the seizure of his legal materials. He advises Defendant Mason is also responsible for the processing of inmate mail. He summarily concludes he suffered damages as a result of the mail being opened and that Mason was directly responsible. He sues Defendants Miles, Mason and Thompson and requests $100,000.00 in compensatory damages and $100,000.00 in punitive damages for illegally opening his privileged mail. He seeks an additional $100,000.00 in compensatory and punitive damages from Defendant Mason for retaliation.

Because the Beaumont court believed Plaintiff was alleging the mail was opened in Beaumont, this claim was addressed in the Magistrate Court's report and recommendation. In his objections to the report and recommendation Plaintiff concurred that the claim should be dismissed. Accordingly, the Court considers this claim to have been withdrawn by the plaintiff.

Plaintiff Patel's remaining claims relate to his exposure to second-hand smoke at the FCI Bastrop facility (claims 15-17, 18-21). Plaintiff explains he is a non-smoker. Upon his arrival to FCI Bastrop, he allegedly informed Mr. Carrell that he was a non-smoker and that second-hand smoke bothered him and aggravated his allergies, making it difficult to breathe. According to Plaintiff, he requested non-smoking housing.

Plaintiff Patel asserts he was assigned to the Crockett Unit and reported to Officer Widden for room assignment. Plaintiff allegedly informed Widden he was a non-smoker and requested non-smoking housing. According to Plaintiff, Widden informed him that, if he did not smoke, Plaintiff

---

[2] The Court has confirmed with BOP officials that Plaintiff was confined in FCI Bastrop from July 9, 2001 until September 19, 2001.

5

would be required to inform his cellmates of the smoking ban.  Despite Plaintiff's request, Widden allegedly assigned Plaintiff to a cell with Inmate Jerry Taylor, a known chain smoker.  In addition, Plaintiff asserts Taylor would invite other inmates to the cell to smoke.  Plaintiff maintains this caused Plaintiff to have uncontrollable choking and coughing fits.  Plaintiff asserts he asked Taylor to stop smoking and to not let his friends smoke in the room.  Taylor allegedly informed Plaintiff the cell was his first and Plaintiff would have to find another cell.  Plaintiff explains this is common prison code among inmates – that the inmate first in a cell retains rights to that cell over the latter arriving inmate in the event of a disagreement.

Plaintiff Patel indicates he asked Widden for a room change, but his request was denied.  As a result of the exposure to the smoke, Plaintiff allegedly started suffering breathing problems which were later diagnosed as asthma. According to Plaintiff Patel, he reported to sick call and was given a prescription for a smoke-free room.  Plaintiff asserts the request was given to Widden, who again refused to move Plaintiff to a smoke-free room.

Plaintiff Patel continued his quest for a smoke-free room by requesting Unit Manager Warren to move him to non-smoking housing.  Warren allegedly denied the request, stating the unit was non-smoking but that smoking was acceptable in the individual rooms with the approval of cellmates.  Plaintiff asserts Widden and Warren continued to insist that Plaintiff Patel stay in the room and enforce the non-smoking rule in his cell.  Plaintiff reasons he is without legal authority to enforce non-smoking rules and is subject to personal harm and danger if he attempted to do so.

According to Plaintiff, Program Statement 1640.03 prohibits the designation of indoor housing cells as smoking areas in low level institutions.  Despite the existence of the program statement, Plaintiff asserts Warren continued to violate the law by permitting smoking inside the

6

housing unit in individual cells. Plaintiff further asserts Warren was required by the program statement to separate non-smoking and smoking inmates and failed to abide by the program statement. Plaintiff contends Warden Miles was responsible for determining the smoking policy at FCI Bastrop, and that he allowed smoking inside the housing units and refused to separate smokers from non-smokers in the individual cells. Plaintiff concludes the only way to protect inmates from exposure to second-hand smoke is to limit smoking in federal prisons.

With respect to the second-hand smoke claim Plaintiff sues Defendants Widden, Warren and Miles for the alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment and seeks $1,000,000.00 in compensatory damages and $3,000,000.00 in punitive damages from each of the defendants. From these same defendants Plaintiff also seeks $500,000.00 in compensatory damages and $2,000,000.00 in punitive damages for the damage to his current and future health and for his mental and emotional injury. Plaintiff also sues Defendant Thompson and Watts, claiming they had the authority to ensure the smoking and non-smoking regulations were followed. From Defendants Thompson and Watts Plaintiff seeks compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $1,000,000.00. In addition, Plaintiff seeks $1,000,000.00 in damages from the BOP for the policy of permitting significant exposure to large amounts of second-hand smoke. Plaintiff further seeks an injunction prohibiting the sale of tobacco products in prison commissaries. Plaintiff also requests a declaration that the actions of Defendants Miles, Warren and Widden permitted smoking in the cells in the housing units in violation of federal law and BOP policy. Finally, Plaintiff requests an injunction prohibiting the BOP from placing him in a cell with a smoking inmate.

As discussed above the Defendants move to dismiss Plaintiff's complaint and/or move for summary judgment. Defendants argue to the extent Plaintiff seeks damages against the BOP and the individual defendants in their official capacities, their claims must be dismissed as they are protected by sovereign immunity. They conclude the Court lacks subject matter jurisdiction over such claims.

Defendants next argue the Court has no "long-arm" jurisdiction over the defendants not located within the district and that venue was improper. This argument was directed to the District of Columbia court and was rendered moot by the case's transfer.

Defendants also argue Plaintiff failed to exhaust his administrative remedies with respect to his claim regarding the improper handling of attorney-client correspondence. This argument was likewise rendered moot when Plaintiff withdrew this claim in his recently filed objections to the Beaumont court's report and recommendation[3]

Defendants also claim their entitlement to qualified immunity. With respect to the second-hand smoke claim they argue Plaintiff failed to show the defendants acted with deliberate indifference. They assert Plaintiff admits BOP has a policy addressing smoking in its institutions. They cite Scott v. District of Columbia, 139 F.3d 940, 944 (D.C. Cir. 1998), for the proposition that a non-smoking policy militates against a finding of deliberate indifference. Nowhere in their motion do Defendants address Plaintiff's claim regarding the alleged unlawful seizure of his property.

Plaintiff clarifies in his response that his request for damages is only brought against the defendants in their individual capacities and his request for injunctive and declaratory relief is brought against the defendants in their official capacities. With respect to his Eighth Amendment

---

[3] The Court notes in his response to the defendants' motion Plaintiff provides the Court with the response to his BP-11, indicating he in fact exhausted his administrative remedies with regard to this claim.

claim Plaintiff emphasizes the policy at FCI Bastrop was to allow smoking indoors in the cells despite the BOP policy to the contrary.

Defendants filed a reply repeating that Plaintiff had not exhausted his administrative remedies with respect to his correspondence claim. Defendants also repeat that Plaintiff failed to show they acted with deliberate indifference with regard to the smoking claim because the BOP had a policy addressing smoking in its institutions.

Plaintiff likewise replied pointing out once again that he had exhausted his administrative remedies with respect to the correspondence claim. In addition, Plaintiff argues the existence of a written policy cannot act to insulate the defendants' willful conduct when the defendants are charged with ignoring and willfully refusing to enforce the non-smoking policy.

## II. ANALYSIS

A.      <u>Standard of Review Under Fed. R. Civ. P. 12(b)(6)</u>

Defendants move to dismiss Plaintiff's complaint or in the alternative move for summary judgment. With respect to the only two claims remaining Defendants do not rely on any summary judgment evidence. Rather, Defendants summarily conclude Plaintiff has not shown the defendants were deliberately indifferent to Plaintiff with regard to second-hand smoke, and they simply ignore Plaintiff's claim regarding the seizure of his legal materials. Accordingly, the Court will analyze Plaintiff's claims under the motion to dismiss standard.

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted. A claim should be dismissed when it appears to a certainty that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Fee v. Herndon</u>, 900 F.2d 804, 807 (5th Cir.1990). In making such a determination, the court may not

9

go outside the pleadings and must accept all well-pleaded facts as true, viewing them most favorably to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). This is a rigorous standard, but subsumed within it is the requirement that the plaintiff state his case with enough clarity to enable the court and opposing party to determine whether a claim is alleged. Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989). A court should dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint. Garrett v. Commonwealth Mortgage Corp. of America, 938 F.2d 591, 594 (5th Cir. 1991). Dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). Mere conclusory allegations will not survive a motion to dismiss. Id.

      B.    Sovereign Immunity

Defendants move to dismiss Plaintiff's claims seeking damages against the BOP and the individual defendants in their official capacities. Plaintiff clarifies in his response that his request for damages is only brought against the defendants in their individual capacities and his request for injunctive and declaratory relief is brought against the defendants in their official capacities. Plaintiff provides no response with respect to his claims brought against the BOP.

The law is clear that Plaintiff's claims for alleged constitutional violations against the BOP are barred by the doctrine of sovereign immunity. Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 71-72, 122 S. Ct. 515, (2001); FDIC v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 996 (1994) (finding there is no direct cause of action for damages against a federal agency because of sovereign immunity). Accordingly, Plaintiff's claims against the BOP should be dismissed for want of jurisdiction.

C.     Qualified Immunity

Defendants assert they are entitled to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id. With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789 (1991); Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions. Hale, 45 F.3d at 917, citing Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S. Ct. 1081 (1994); Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis. As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified

immunity. <u>Saucier</u>, 533 U.S. at 201, 121 S. Ct. at 2156. If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established--that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 202, 121 S. Ct. at 2156. If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. <u>Id.</u> at 205, 121 S. Ct. at 2158. With these principles in mind, the Court will address the issue of Defendants' qualified immunity.

        D.        <u>Seizure of Property</u>

As explained by Plaintiff, upon his arrival at FCI he was not allowed to maintain all of his property. Plaintiff admits he was allowed to mail two boxes of his property to his house. However, he now has no access to these materials, which included legal reference books. He indicates prison policy was not followed in that regional counsel was not consulted.

Plaintiff's claim that the seizure violated prison regulations does not implicate any constitutional right. <u>See</u> <u>Hernandez v. Estelle</u>, 788 F.2d 1154, 1158 (5th Cir. 1986). Similarly, to the extent Plaintiff is attempting to raise a denial-of-access claim, his claim fails. Plaintiff has not alleged any resulting injury. See <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999) (holding a prisoner cannot prevail on an access-to-the-courts claim without demonstrating an actual injury).

        E.        <u>Exposure to Second-Hand Smoke</u>

Prisoners have a constitutional right not to be involuntarily exposed to "unreasonably high levels" of environmental tobacco smoke ("ETS") or other toxins. <u>Helling v. McKinney</u>, 509 U.S. 25, 113 S. Ct. 2475 (1993). The Fifth Circuit has recognized potential environmental tobacco smoke claims where exposure to tobacco smoke was severe and sustained, such as when the plaintiff shared living quarters with a smoker or was required to work in a smoke-filled environment.

Whitley v. Hunt, 158 F.3d 882, 887-88 (5th Cir. 1998); Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997). A two-prong test is used to determine whether ETS exposure violates a prisoner's Eighth Amendment rights. He must: (1) prove he is "being exposed to unreasonably high levels of ETS;" and (2) show prison officials demonstrated "deliberate indifference" to his plight. Helling, 509 U.S. at 35-36. Deliberate indifference requires a finding of "obduracy and wantonness, not inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986). In evaluating deliberate indifference to ETS, the following factors should be considered: the adoption of a smoking policy; the administration of that policy; and the realities of prison administration. Helling, 509 U.S. at 36-37.

Plaintiff has more than adequately pleaded he was exposed to unreasonably high levels of ETS while confined at FCI Bastrop. As described in his complaint, Plaintiff shared a cell with a chain smoker, who would invite others to smoke in the cell with him. Plaintiff alleges the smoke caused him to have asthma, and medical personnel provided Plaintiff with a prescription for non-smoking housing. Despite Plaintiff's requests, complaints and prescription, Plaintiff was not moved to a non-smoking cell. Defendants mistakenly argue because a non-smoking policy of some sort was in place they are absolved of any liability. However, as made clear by Plaintiff in his complaint, Defendants Warren, Widden and Miles allegedly ignored the policy and did nothing to protect Plaintiff from exposure to second-hand smoke. Plaintiff's allegations are more than sufficient to state a claim against these defendants.

Plaintiff also sues Defendants Thompson and Watts, claiming they had the authority to ensure the smoking and non-smoking regulations were followed. Plaintiff appears to being suing Defendants Thompson and Watts, because Plaintiff was not satisfied with their responses to his

administrative grievances. However, the Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). As such, Defendants Thompson and Watts are entitled to qualified immunity.

      F.      Injunctive Relief

Plaintiff requests an injunction prohibiting the sale of tobacco products in prison commissaries. However, Plaintiff is not entitled to such relief. The sale of tobacco products does not violate Plaintiff's constitutional rights.

Plaintiff also requests an injunction prohibiting the BOP from placing him in a cell with a smoking inmate. BOP Program Statement 1640.04, effective July 15, 2004, allows wardens to only designate smoking areas, if any, outdoors. Accordingly, Plaintiff's request is moot.

### III. RECOMMENDATION

The undersigned recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss. Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE** with the exception of Plaintiff's Eighth Amendment claim brought against Defendants Widden, Warren and Miles in their individual capacities for monetary relief. The undersigned further recommends that the District Court **DISMISS** Defendants' Alternative Motion for Summary Judgment without prejudice to refiling a properly supported motion for summary judgment.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of September, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE